Thank you, Your Honor. Good morning. Cheryl Gordon-McLeod on behalf of Mr. Carper. This case raises a question of first impression in this court, and that is whether guideline 2M5.2A2's lower base offense level of 14, which is applicable when there are fewer than 10 small arms, except when those small arms are fully automatic small arms, means that 2M5.2A2's benefit is reserved for firearms, as the government argues, or instead applies to, quote, small arms, close quotes, or, quote, weapons, close quotes, as the guidelines language itself says. Specifically in this case, the question is whether the night vision goggles are covered by 2M5.2A2's benefit, since there were five of them, which is fewer than 10, since night vision goggles are arms, and since they're small, or whether they're categorically excluded, because arms in that guideline really means firearms. I gather that your whole case hangs upon the context, or on the concept, that the term is ambiguous. As you know, the Second Circuit in Saro held that it was unambiguous. Why is the reasoning of the Second Circuit wrong in this case? I actually think that the reasoning of the Second Circuit is correct, though its conclusion on that point was wrong. The Second Circuit was presented with two sets of things that had been exported, ammunition and components. It held, on the one hand, that ammunition was not covered by 2M5.2A2, and that's what they said was quite clear. It held, on the other hand, that components are covered by the language of 2M5.2A2, only not in that case, because they counted them up, and it was more than 10 components. Well, that logic favors our argument. If components are covered, a component, and there they had such small things as a takedown pin and a trigger housing, if a single one of those is covered by 2M5.2A2, that would mean that you would get the benefit of that component. You would get the 14-level benefit, yet a component is not a firearm. But weren't they all components of firearms? Absolutely. So they weren't components of night vision goggles or grenades or anything like that. They were firearm components. That's correct, but if you look at the plain language of 2M5.2A or A2, it doesn't say anything about components. And if you compare that with the munitions list in ITAR, you'll see that they specifically list components. So it's not like either Congress or the Commission or the authors of the regulations didn't know how to say components if they meant components. In this case, 2M5.2A2 says small arms. It doesn't say firearms, which is the government's argument. The only examples it gives are firearms. That's correct, but those are examples for the exception to the exception. 2M5.2A1 is the 26 base offense level. A2 is the exception with the 14 level. The language you're quoting is part of the exception to the exception. The exception to the exception says non-fully automatic, perens, pistols, rifles, whatever, closed perens. So it's an exception to the exception, and it uses a negative within the exception. If that doesn't get you to ambiguity, I'm really not sure what does. Because when you get to the end of that parenthetical, and by the way, the government has agreed that the parenthetical is illustrative, not exclusive. When you get to the end of the parenthetical, the words are, quote, small arms, close quote. So the parenthetical is illustrating non-fully automatics, but the entire 2M5.2A2 is talking about small arms, and in the couple of words after small arms, it says, and the number of weapons did not exceed 10. So you've got two choices in that sub-2, either small arms or weapons. Nowhere does it say firearms. I understand that the terms fully automatic and non-fully automatic and semi apply to firearms. They're talking about the exception to the sub-2 exception, though. And in other portions of the regulations on ITAR, on the munitions list, you see in 22 CFR 121.1, Category 1, I think it's sub-H, sorry, sub-G, it talks about automatic and semi-automatic firearms. Why the difference between automatic and semi-automatic firearms there, but just small arms in the guideline? Let's assume, arguendo, that you're right, that there's ambiguity. That gets us then to congressional intent. What would you point to in congressional materials that would clarify the congressional intent? Your Honor, I have nothing to point to in the congressional materials that would clarify their intent. The intent of the – You mean Congress is ambiguous sometimes? I am shocked. They adopted this to clarify the prior guideline that said sophisticated, as you know, in 1990, and this was supposed to clear up the problem. Well, I can tell you that there is an illogical result to my argument, and I can tell you that there's an illogical result to the government's argument. The illogical result to my argument is if A2 applies to weapons that are small, then as the government says, if you get a small weapon of mass destruction or suitcase bomb. So your point, I take it, is this is ambiguous language. Congress doesn't clarify it. Therefore, we apply the rule of lenity. Is that basically your position? That's basically my position. I cannot tell you that this is clear-cut in favor of Mr. Carper. I was going to say that the – I can't tell you it's clear-cut in favor of Mr. Carper. I can't tell you it's clear-cut in favor of the government. I acknowledge that there's an illogical slippery slope with my argument, but there's an illogical slippery slope with the government's argument, and that is if A2 is limited to firearms, it includes pistols, handguns, shotguns, but it doesn't include a single takedown pin, which I looked up on the Internet this morning, and you can pick up for $2.99, $2.99. You've made a very good argument. Could you tell us something about the background of Mr. Carper? Mr. Carper received a downward departure at sentencing because of his exemplary conduct in the Marine Corps, in combat, in Iraq, where he served, where he saw combat and where he did – where he engaged in volunteerism through the entire time that he was there. The district court, after calculating this high offense level, gave him a slight downward departure or very – Is he in business as an arms dealer or what? No, he was in the Marine Corps. He was serving his country, and an opportunity arose, and he did the wrong thing. He was charged in a conspiracy with two other guys. They were charged with taking the night-vision goggles from the Marine Corps. They were charged with taking scores of night-vision goggles. He was charged with taking five of them from his buddies, putting them on eBay to sell, and that their ultimate destination was either Poland or Hong Kong. His background is honorable service, except for this conviction, volunteerism, and the judge specifically found that he presented no risk of recidivism. Do you want to save any of your time? I do. Thank you, Your Honor. Okay. We'll hear from the government. Aloha. Good morning. My name is Chris Thomas. I'm an assistant U.S. attorney from the District of Hawaii. The government's position is the plain language of the Sensing Guideline 2M5.2 is the base offensive level 26 applies in this case. And the government cited two cases, one of which Justice Smith cited, the Second Circuit case. Remember, there's no justice on the Ninth Circuit, only on the Supreme Court. Judge Smith. That was the case of United States v. Saro, and the language was that, quote, the language of the guideline is clear, unquote, and it applied at level 26 base offense level. The other case that the government cited is a Fourth Circuit case, U.S. v. O'Donnell, and that's a case that the defense attorney relied upon in their brief. Language in that case, quote, the optics at issue here were sophisticated munitions, which do not obviously fall within the category of non-fully automatic small arms. And in that case, the court was looking at night vision goggles. So that's an explicit example of how the 26 offense level of 2M5.2 applies to night vision goggles. Now, the government has cited two cases. The defense has cited none. There's not a single citation that the defendant can cite which supports their argument that the base offense level 14 applies to a night vision goggle. Also, what the defense fails to mention in their brief is application notes to 2M5.2. And application note one gives more examples of what applies for base offense level 26. And in the last sentence of application note one, it states that included in this list are such things as military aircraft, helicopters, artillery, shells, missiles, rockets, bombs, vessels of war, explosives, and in this case, military electronics, which is category 11, which night vision goggles falls under. And then it says, and certain firearms. Now, when you look at that wording, certain firearms, that relates back to the level 14, non-fully automatic arms. And that's the argument of the government. Now, the government is arguing that 2M5.2 is clear. You're saying that 26 applies to everything except this narrow class of firearms. Yes, Your Honor. So, a rifle that's not fully automatic or a pistol that's not fully automatic, it's actually the government's view of the statute and the guideline is it's a very small exception to begin with. It's a very small class of weapons. Yes, Your Honor. So, 2M5.2, the default is base offense level 26, unless this exception for base offense level 14 applies. Now, we're saying that it's unambiguous and that the language is clear, but even if you look at the legislative history, it supports a base offense level 26. At the origination of this guideline, 1987, it had language that said sophisticated weaponry. And all of the case law interpreting the 2M5.2 dealt with the interpretation of that language. In 1990, this sentencing guideline was amended and changed it to that two-tier system that is present today in 2M5.2. So, since 1990, we've had this language. I noticed in 2009 with Amendment 633 of the National Defense Authorization Act that the Congress raised the base offense level in the general category from 22 to 26 and expressed the sense of the Congress that, in quotes, guideline penalties are inadequate for certain offenses involving the importation and exportation of nuclear, chemical, and biological weapons materials and technologies. That's correct. Does that bear on this issue from your perspective? Well, you know, of the amendments to 2M5.2, that was the amendment that was Congress-directed. And so the Sentencing Guideline Commission acknowledged Congress and raised the offense level from 22 to 26. Now, they could, at that point, amended the language because they had 20 years up to that or almost 20 years up to that point to amend the language in the 26th level, but they chose not to. Is there anything in the record that indicates what Congress intended by the term technologies in the language that I just read a moment ago? Yeah, I'm sorry, Your Honor. I have not reviewed it to that point, so I apologize. I can't answer your question. But as it relates to the technology in this case, the night vision goggles are specifically mentioned in the munitions list in the Code of Federal Regulations. And from your reading of the munitions list, it would clearly fall under the 26th base level, right? Oh, yes, Your Honor, yes. That's the argument for the government. Unless there are any other questions, I have nothing further. Thank you. I don't believe so. Thank you very much. Thank you, Your Honor. Rebuttal. Your Honor. The single case or the Oldani case, which is one of the two cases that the government cites, just to point out, was not a circuit case. It was a West Virginia District Court case, and it's unpublished. It did say exactly what the government said. It said that was not the focus of the case, though the focus of the case was the fact that the amendment you were just talking about, raising it from 22 to 26, was. What's your take on that particular issue? I find some difficulty understanding the concept of technologies to cover anything but something like these goggles. They're very technical, they're very important. From what I understand, they are one of the important things that we have in our arsenal, if you will, that help us deal with people who have far less sophisticated weapons and give us an advantage. They're certainly sophisticated, although that's not the criteria. As to whether it's included under technologies, when I was reading arms export cases, I came across several military coding cases, and I assume that that's what technology was referring to, rather than to equipment, such as night vision goggles. To me, that's what the term arms or small arms refers to, under the definition of small arms even, of something being capable that a single infantryman is capable of carrying. You would agree, I gather, that in order to get to your position, though, we must find the regulation to be ambiguous. Absolutely, Your Honor. I can't say the regulation is clearly in Mr. Carper's favor, but it's certainly ambiguous, even its structure of Section 2 negating Section 1 and then using a negative. But something can be inartfully drafted and still not be ambiguous, right? Absolutely. History tells us that. Thank you very much for your argument. Thanks, both counsel. The case of United States v. Carper is submitted.
judges: Noonan, M Smith, Cjj Fogel (N. Cal.), Dj